UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
                            :

DANIEL ALEXANDER ECKER,       :
                            :

              Plaintiff,   :

                            :

             v.              :

                            :

CAROLYN W. COLVIN,          :
COMMISSIONER OF SOCIAL SECURITY,  :
                            :

             Defendant.  :

                            :
---------------------------------------------------X

        15 Civ. 2673 (KPF)

        OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 6, 2016

KATHERINE POLK FAILLA, District Judge[1]:

    Plaintiff Daniel Ecker filed this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a decision

by the Acting Commissioner of Social Security (the "Commissioner") denying

Plaintiff's application for Social Security Disability Insurance Benefits ("DIB").

The parties have filed cross-motions for judgment on the pleadings.  For the

reasons set forth in the remainder of this Opinion, Defendant's motion is

granted and Plaintiff's motion is denied.

## BACKGROUND[2]

    Plaintiff filed an application for DIB on July 5, 2012, alleging that he has

been disabled since June 19, 2012.  (SSA Rec. 36).  The Commissioner denied

---

[1]    Linda Hsu, a rising second-year student at the University of Pennsylvania Law School
    and an intern in my Chambers, provided substantial assistance in researching and
    drafting this Opinion.

[2]    The facts in this Opinion are drawn from the Social Security Administrative Record
    ("SSA Rec.") (Dkt. #6).  For convenience, the Court will refer to Plaintiff's brief (Dkt. #11)
    as "Pl. Br.," Defendant's brief (Dkt. #17) as "Def. Br.," and Plaintiff's reply (Dkt. #18) as
    "Pl. Reply."

this claim on November 15, 2012.  (*Id.*).  On August 22, 2013, Plaintiff

contested this decision at a hearing before an Administrative Law Judge (the

"ALJ").  (*Id.*).

## A.      Plaintiff's Background and Employment History

Plaintiff was born on August 1, 1960.  (SSA Rec. 8).  He has an

Associate's Degree in business and took college-level computer science classes

for three years.  (*Id.* at 54).

From 1985 to 2012, Plaintiff worked for United Parcel Service ("UPS"),

first as a driver and then as a counter clerk.  (SSA Rec. 42, 55-56, 214).

Plaintiff testified that his work as a driver took a great toll on his body, and

that while his position as a counter clerk was less physically demanding, he

was still required to lift packages weighing up to 150 pounds.  (*Id.* at 56).

Plaintiff testified that he left his job at UPS after his doctor advised him to stop

working, but added that he "hope[d] to someday work a little part time."  (*Id.* at

189).

## B.      Plaintiff's Medical History

### 1.      Plaintiff's Reported Medical Conditions

In 2008, Plaintiff reported that he had been experiencing pain in his left

knee for several months.  (SSA Rec. 347).  An MRI revealed that he had a

"degenerative medial meniscus tear," and on January 5, 2009, he underwent

surgery for the condition.  (*Id.* at 346, 350).

In 2011, Plaintiff allegedly contracted Lyme disease and was treated by Dr. Stuart Feinstein with antibiotics.  (SSA Rec. 40).[3]  Plaintiff related to the ALJ that the Lyme disease, which Plaintiff claimed remained undiagnosed for three months, caused him to experience knee pain, and as a result, he used his back to lift packages at work.  (*Id.* at 57).  Eventually, Plaintiff developed lower back pain and numbness from his waist down.  (*Id.* at 241).  On March 16, 2012, Plaintiff received an MRI of his back, which indicated that he had "L3-L4 moderate to severe lumbar stenosis, due to diffuse disc bulge, bilateral neuroforaminal narrowing and at L5-S1 moderate degree central canal stenosis."  (*Id.* at 246).[4]

### 2.    Plaintiff's Treating Relationship with Dr. Reddy

On April 19, 2012, Dr. Ravichandra Reddy performed an electrodiagnostic examination on Plaintiff and found evidence of motor peripheral neuropathy and multi-level lumbar radiculopathy, which suggested lumbar spinal stenosis.  (SSA Rec. 239-40).[5]  After also reviewing Plaintiff's

---

[3]    Plaintiff's medical records from January 23, 2012, indicate that his symptoms were "non-specific," and thus may not have been caused by Lyme disease.  (SSA Rec. 335).

[4]    Lumbar stenosis is the narrowing of the spinal canal, through which the spinal cord and spinal nerves run.  The narrowing of the spinal canal can cause the nerves to become pinched and irritated.  *Diseases and Conditions: Lumbar Canal Stenosis*, Cleveland Clinic, http://my.clevelandclinic.org/health/diseases_conditions/hic_Lumbar_Canal_Stenosis (last visited July 6, 2016).

A disc bulge occurs when the disk, which acts as a cushion between the vertebrae of the spine, expands into the spinal canal.  *Bulging and herniated disks*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/herniated-disk/multimedia/bulging-and-herniated-disks/img-20007335 (last visited July 6, 2016).

[5]    Peripheral neuropathy, which occurs when the peripheral nerves are damaged, can cause weakness, numbness and pain.  *Peripheral Neuropathy*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/home/ovc-20204944 (last visited July 6, 2016).  Lumbosacral radiculopathy occurs when nerve

MRI, Dr. Reddy advised him to begin an exercise program and modify his activities, and prescribed Gabapentin for his pain.  (*Id.* at 240).

From May 3, 2012, to June 19, 2012, Plaintiff visited Dr. Reddy three times for reevaluations, reporting that although his leg pain and muscle cramps had improved, he still felt back pain, stiffness, and tingling in his legs. (SSA Rec. 241-47).  In response, Dr. Reddy increased Plaintiff's dosage of Gabapentin, prescribed Lortab to help with pain relief, and advised Plaintiff to "refrain from increased activity."  (*Id.*).  Then, during a visit on June 25, 2012, Dr. Reddy noted that Plaintiff had a "severe flare up of overall pain" with "severe spasm[s]" and "poor sitting tolerance."  (*Id.* at 248).  An MRI report from the same day indicated that since his last MRI, Plaintiff's spinal stenosis had become severe: he had developed a midline herniation that was narrowing the diameter of the spinal canal by roughly 60%, and also had an "associated underlying broad based disc bulge."  (*Id.* at 251-52).[6]  As a result, Dr. Reddy added the pain medication Opana and the anti-inflammatory Medrol to Plaintiff's medication regimen.  (*Id.* at 249).

---

roots are impinged or inflamed, causing neurologic symptoms in the areas the nerve supplies.  Gerard A. Malanga, *Lumbosacral Radiculopathy*, Medscape (Dec. 30, 2015), http://emedicine.medscape.com/article/95025-overview.

[6]    A herniated disk occurs when a disk, which acts as a cushion between the vertebrae of the spine, cracks, and the soft interior leaks out of the hard exterior.  *Diseases and Conditions: Herniated Disk*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/herniated-disk/basics/definition/CON-20029957?p=1 (last visited July 6, 2016).

### 3.      Plaintiff's Treating Relationship with Dr. Cho

Plaintiff was referred to a second doctor, Dr. Michael Cho, who examined him on June 27, 2012, and determined that he had facet arthropathy, "a large central herniated disk at L3-L4 which had migrated inferiorly," "severe thecal sac compression at L3-L4," and "moderate compression at L4-L5." (SSA Rec. 57, 254, 272).[7]  On June 29, 2012, Dr. Cho performed surgery (an L3-L5 laminectomy and an L3-L4 central discectomy) in an attempt to alleviate some of Plaintiff's symptoms.  (*Id.* at 272).[8]  The hospital's discharge summary from three days later noted that Plaintiff's numbness had improved, he was walking, and he was being discharged to his home with the pain medicine Percocet.  (*Id.* at 267).

On July 10, 2012, Plaintiff visited Dr. Cho for a follow-up examination. (SSA Rec. 325).  Dr. Cho noted that most of Plaintiff's symptoms had improved, and despite still feeling "numbness in the left leg," he was "feeling much better" overall.  (*Id.*).  On August 7, 2012, Dr. Cho examined Plaintiff in a second follow-up visit, noting that though he had "mild weakness of the right leg," his leg symptoms had improved and he was doing well in general.  (*Id.* at 327).

---

[7]      Facet arthropathy refers to disorders causing pain in the facet joint.  *See* Carl H. Shin, *Lumbar Facet Arthropathy Clinical Presentation* (May 26, 2016), http://emedicine.medscape.com/article/310069-clinical#showall.

[8]      A laminectomy "enlarges [the] spinal canal" by removing "the back part of the vertebra that covers [the] spinal canal."  *Tests and Procedures: Laminectomy*, Mayo Clinic, http://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition/prc-20009521 (last visited July 6, 2016).  A discectomy removes the damaged part of a herniated disk.  *Tests and Procedures: Diskectomy*, Mayo Clinic, http://www.mayoclinic.org/tests-procedures/diskectomy/basics/definition/prc-20013864 (last visited July 6, 2016).

On November 14, 2012, one day before the initial denial of Plaintiff's benefits application, Dr. Cho conducted a third follow-up examination, observing that Plaintiff's leg pain had lessened but his lower back pain persisted. (SSA Rec. 329). He permitted Plaintiff to "gradually increase his activities." (*Id.*). On May 15, 2013, Dr. Cho evaluated Plaintiff once more, finding that Plaintiff no longer felt pain and numbness in his leg, but still felt back pain that was "exacerbated by exertion." (*Id.* at 331). Dr. Cho's notes concluded that Plaintiff was, "overall, doing well." (*Id.*).

Dr. Cho also completed a physical medical source statement for Plaintiff, in which he observed that Plaintiff experiences "severe pain" and is "unable to lift, bend, twist, pull [or] stretch." (SSA Rec. 338). He stated that Plaintiff may sit for zero minutes at a time and stand for one hour at a time before needing to switch positions, and he noted that Plaintiff required breaks due to chronic fatigue, pain, and numbness. (*Id.* at 339). Finally, Dr. Cho identified Plaintiff's prognosis as "poor" (*id.* at 338), and repeatedly stated that he was "totally disabled" (*id.* at 338-42).

## C.    Assessments Made in Connection with Plaintiff's Application for DIB

### 1.    Consultative Examination by Dr. Montalvo

Dr. Elizama Montalvo conducted a consultative examination of Plaintiff on October 9, 2012, about two months after Plaintiff first applied for benefits. (SSA Rec. 278). Dr. Montalvo explained that Plaintiff complained of back pain and found it difficult to stand or sit for long periods of time. (*Id.*). She observed that Plaintiff "appeared to be in no acute distress," and was able to

6

walk on his heels and toes, change for the exam, climb on and off the exam table, and rise from his chair without assistance. (*Id.* at 279). Dr. Montalvo classified Plaintiff's prognosis as "fair to stable," and diagnosed him with low back pain. (*Id.* at 280). Dr. Montalvo also determined that Plaintiff had a mild limitation on bending, a mild-to-moderate limitation on carrying and pushing, and a mild-to-moderate limitation on sitting and walking. (*Id.*).

### 2. Plaintiff's Residual Functional Capacity Assessment

On November 14, 2012, disability analyst Candice M. Potrafka performed a residual functional capacity ("RFC") assessment of Plaintiff. (SSA Rec. 299). On the evidence of Dr. Reddy's and Dr. Cho's progress notes, Dr. Montalvo's consultative examination results, and Plaintiff's own adult function report, Ms. Potrafka found Plaintiff's allegations "partially credible." (*Id.* at 303). She determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (*Id.* at 300).

### 3. Plaintiff's Medical Evaluation by Dr. Billinghurst

Dr. Craig Billinghurst of the Social Security Administration's (the "SSA") Dallas Disability Process Unit reviewed Plaintiff's medical records in February 2013. (SSA Rec. 318). He noted Plaintiff's prior employment and surgical history, but also observed that Plaintiff had presented at his consultative examination with a normal gait and "NAD" (a medical abbreviation for "no abnormality detected" or "no apparent distress"). (*Id.*). Dr. Billinghurst

recommended denial of disability, and further opined that a "light" residual functional capacity was reasonable.  (*Id.*).

**D.     Plaintiff's Current Activities and Limitations**

Plaintiff acknowledges that he is able to shower, dress himself, drive his car, perform light housework, walk one mile a day for exercise, and attend church twice a week.  (SSA Rec. 179-83).  His wife testified that he can walk the dog, wash small loads of dishes, make the bed, prepare cereal for breakfast, and "make[] himself a sandwich."  (*Id.* at 201, 204).

Plaintiff wrote that he is unable to kneel, squat, or lift more than 25 pounds.  (SSA Rec. 183-84).  At his oral hearing, he also testified that he cannot stand for more than 10 to 15 minutes, and if he stands still without shifting his position, he immediately begins to feel pain.  (*Id.* at 60-61).  He claimed to experience pain when sitting upright, and further noted that he must sit in a "reclining position" to relieve the pressure on his lower back.  (*Id.* at 59, 184).  He reported that he takes Ibuprofen and Tylenol to manage the pain.  (*Id.* at 62, 189).

**E.     The ALJ's Opinion Denying Benefits**

On October 22, 2013, the ALJ issued a decision denying benefits.  (SSA Rec. 36).  As a threshold matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016.  (*Id.*).  Next, the ALJ followed the familiar five-step process to determine whether Plaintiff was

disabled.  20 C.F.R. 416.920(a).[9]  At the first step, the ALJ determined that
Plaintiff had not been engaged in substantial gainful activity since his alleged
onset date.  (*Id.* at 38).  At the second step, the ALJ found that Plaintiff had
severe impairments, consisting of moderate to severe spinal stenosis with
neurogenic claudication, which affected Plaintiff's ability to perform basic work
activities.  (*Id.*).[10]  At the third step, the ALJ determined that Plaintiff's
condition did not meet or medically equal the severity of a listed impairment in
Appendix 1 of 20 C.F.R. 404.1520(c) because Plaintiff was able to "ambulate
independently" and remained "neurologically intact."  (*Id.* at 39).

　　　At the fourth step of the analysis, the ALJ assessed Plaintiff's RFC and
determined that he could no longer perform his past relevant work.  (SSA

---

[9]　　The Second Circuit has described the five-step analysis as follows:

> First, the Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> Commissioner next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the Commissioner will consider [him *per se*]
> disabled.... Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work. Finally, if the claimant is unable to perform
> his past work, the Commissioner then determines whether there is
> other work which the claimant could perform.

*Selian* v. *Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera* v. *Astrue*, 697
F.3d 145, 151 (2d Cir. 2012)).  "The claimant bears the burden of proving his or her
case at steps one through four," while the Commissioner bears the burden at the final
step.  *Butts* v. *Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

[10]　　Neurogenic claudication refers to leg pain that accompanies walking, caused by spinal
stenosis.  John H. Shim, *Spinal Stenosis Symptoms and Diagnosis*, Spine-health,
http://www.spine-health.com/conditions/spinal-stenosis/spinal-stenosis-symptoms-
and-diagnosis (last visited July 6, 2016).

Rec. 39).  In making this determination, the ALJ followed a two-step process, first considering if a medically determinable impairment existed that reasonably could be expected to produce Plaintiff's symptoms, and then considering the extent to which Plaintiff's symptoms limited his ability to work. (*Id.*).

The ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause his symptoms.  (SSA Rec. 39).  The ALJ explained that Plaintiff's medical records showed that he gradually developed progressive low back pain and leg pain, with a March 2012 MRI indicating that he had "moderate to severe lumbar stenosis due to diffuse disc bulge, bilateral neuroforaminal narrowing and moderate central canal stenosis."  (*Id.*).

However, the ALJ found that Plaintiff's account of the "intensity, persistence and limiting effects" of his symptoms was not entirely credible. (SSA Rec. 41).  The ALJ explained that Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (*Id.*).  Moreover, the ALJ believed that the record did "not contain any non-conclusory opinions, supported by clinical or laboratory evidence, from treating or examining physicians" suggesting that Plaintiff was disabled.  (*Id.*).

The ALJ acknowledged that Plaintiff's treating physician, Dr. Cho, had opined that Plaintiff was "totally disabled."  (SSA Rec. 40).  However, the ALJ

believed that this opinion was entitled to "little weight." (*Id.* at 41). In the ALJ's view:

> Dr. Cho's opinion that the claimant [could] perform significantly less than the full range of sedentary work [was] quite conclusory, since the doctor provided very little explanation of the evidence he relied on in assessing such severe limitations. In addition, his opinion that [Plaintiff was] "totally disabled" [was] inconsistent with his own treatment notes, which show[ed] that [Plaintiff] experienced good symptomatic recovery after the surgery (see Exhibits 2F, 5F, and 11F). Moreover, statements that a claimant is "disabled," "unable to work," or "cannot do past relevant work," are not medical opinions, but are administrative findings of fact on issues that are reserved to the Commissioner (SSR 96-5p).

(*Id.*).

By contrast, the ALJ gave "great weight" to the opinion of Dr. Montalvo, the consulting examiner, because her opinion was consistent with the results of an examination of Plaintiff that she performed in October of 2012. (SSA Rec. 41). The ALJ also ascribed "significant weight" to the opinion of Dr. Craig Billinghurst, the medical consultant, because his opinion was consistent with Dr. Cho's post-surgical notes. (*Id.*).

In addition, the ALJ observed that Plaintiff "betrayed no evidence of debilitating symptoms" at his hearing. (SSA Rec. 41). The ALJ noted that, while the hearing was brief and may not have captured all the symptoms Plaintiff experienced daily, the ALJ could factor the absence of incapacitating symptoms during the hearing into his decision. (*Id.*). Taking all of these points into account, the ALJ ultimately concluded that Plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

except for jobs requiring more than occasional stooping, or more than occasional climbing stairs/ramps/ladders/ropes and scaffolding." (*Id.* at 39).

The ALJ then found that Plaintiff lacked the RFC to perform his past relevant work as a UPS driver and counter clerk. (SSA Rec. 42). The ALJ noted that even as a counter clerk, Plaintiff was required to lift packages weighing more than 100 pounds. (*Id.*). Because "the physical demands of this work exceed[ed] his current residual functional capacity for a broad range of light work," the ALJ found that Plaintiff could not return to his former job. (*Id.*).

At the fifth step, the ALJ looked to the Medical-Vocational Guidelines listed at 20 C.F.R. Part 404, Subpart P, Appendix 2 and concluded that Plaintiff's RFC, age, education and work experience allowed him to perform other work. (SSA Rec. 42). Because Plaintiff was 51 years old on his disability onset date, had a high school education, could communicate in English, and was able to perform light work, the ALJ found that there were numerous jobs in the national economy that he could still perform. (*Id.*). The ALJ explained that a claimant with the RFC to perform the full range of light work is not considered disabled. (*Id.*). He noted that although Plaintiff was not able to stoop or climb ladders, those limitations had "little to no effect on the occupational base of unskilled light work," and were insignificant. (*Id.* at 43). Thus, the ALJ found that Plaintiff was not disabled. (*Id.*).

**F.      Procedural History**

On December 12, 2013, Plaintiff requested that the Appeals Council review the ALJ's hearing decision denying him benefits; his request was denied on January 30, 2015.  (SSA Rec. 1, 31).  On April 7, 2015, Plaintiff filed his Complaint in the instant matter, appealing the Commissioner's denial of his benefits application.  (Dkt. #1).  The Commissioner filed her answer on August 17, 2015.  (Dkt. #7).  Plaintiff filed a motion for judgment on the pleadings on September 19, 2015 (Dkt #10), and the Commissioner filed a cross-motion for judgment on the pleadings on December 10, 2015 (Dkt #17).  In response, Plaintiff filed his opposition on January 8, 2016.  (Dkt #18).  No further submissions have been filed.

<b>DISCUSSION</b>

**A.      Applicable Law**

**1.      Motions Under Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed R. Civ. P. 12(c).  A court applies the same standard applied to a motion for judgment on the pleadings as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  When considering either, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an

13

entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [Plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

### 2.  Review of Determinations by the Commissioner of Social Security

In order to qualify for DIB, a claimant must demonstrate his "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Butts* v. *Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  The claimant must also establish that the impairment is "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  Furthermore, the disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

The presiding ALJ has an affirmative obligation to develop the administrative record.  *See Lamay* v. *Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *Casino-Ortiz* v. *Astrue*, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007) (citing *Perez* v. *Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).  This means that the ALJ shall "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" a determination as to the claimant's disability.  42 U.S.C. § 423(d)(5)(B).

In reviewing the final decision of the SSA, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A court must uphold a final SSA determination to deny benefits unless that decision is unsupported by substantial evidence or is based on an incorrect legal standard.  *Selian* v. *Astrue,* 708 F.3d 409, 417 (2d Cir. 2013) ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (quoting *Talavera* v. *Astrue*, 697 F.3d 145, 151 (2d Cir. 2012))); *see also* 42 U.S.C. § 405(g) ("If there is substantial evidence to support the determination, it must be upheld.").  Where the findings of the SSA are supported by substantial evidence, those findings are "conclusive."  *Diaz* v. *Shalala*, 59 F.3d 307, 312 (2d Cir. 1995) ("The

15

findings of the Secretary are conclusive unless they are not supported by substantial evidence." (citing 42 U.S.C. § 405(g))).

"Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard is "a very deferential standard of review — even more so than the clearly erroneous standard." *Brault* v. *Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).  To make the determination of whether the agency's findings were supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (quoting *Mongeur* v. *Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

## B.   Analysis

Plaintiff urges this Court to reverse the ALJ's decision because, in his view: (i) Plaintiff's impairments are as severe as the impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04 ("Listing 1.04") (Pl. Br. 11 & n.6); (ii) the ALJ violated the treating physician rule (*id.* at 9-15); (iii) the ALJ's credibility determination and RFC determination were not supported by substantial evidence (*id.* at 15-17); (iv) the ALJ improperly declined to consider Plaintiff's Lyme disease in making his RFC determination (*id.* at 14); (v) the ALJ improperly relied on the Medical-Vocational Guidelines

16

(*id.* at 17); and (vi) new evidence suggests that Plaintiff is in fact disabled (*id.* at 18).  The Court will address each of these contentions in turn.

### 1.     The ALJ Properly Determined That Plaintiff's Impairments Are Less Severe Than the Impairments Described in Listing 1.04

Listing 1.04 only applies to spinal injuries involving the lower back if, among other things, those injuries cause: (i) "a positive straight-leg raising test (sitting and supine)," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A); (ii) "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging," *id.*, § 1.04(B); or (iii) "[l]umbar spinal stenosis … resulting in inability to ambulate effectively, as defined in 1.00B2b," *id.*, § 1.04(C).  Crucially, none of Plaintiff's doctors found that he had a positive straight-leg raising test in the "sitting *and* supine" positions.  *Id.*, § 1.04(A) (emphasis added).  Instead, Dr. Montalvo determined that Plaintiff had negative straight-leg raising tests (SSA Rec. 280); Dr. Reddy found that Plaintiff had a positive straight-leg raising test only in the supine position (*id.* at 246); and Dr. Cho did not indicate that he performed a straight-leg raising test at all.  Similarly, none of Plaintiff's doctors indicated that he was suffering from "spinal arachnoiditis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(B).  Finally, the record does not contain any evidence that Plaintiff had an "inability to ambulate effectively, as defined in 1.00B2b."  *Id.*, § 11.04(C).  An "inability to ambulate effectively" refers to "an extreme limitation of the ability to walk … generally [marked by] insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id.*,

§ 1.00(B)(2)(b)(1).  Plaintiff expressly testified that he walks a mile a day for exercise.  (SSA Rec. 183).  This testimony precludes a finding that Plaintiff is "extreme[ly]" limited in his ability to walk.  More generally, Plaintiff's testimony that he is able to perform a wide array of daily activities — including walking, shopping, and light household chores — precludes a finding that his impairments are as severe as those described in Listing 1.04.

### 2.    The ALJ Did Not Violate the Treating Physician Rule

Plaintiff next contends that the ALJ violated the "treating physician rule" when he decided to give little weight to the opinion of Plaintiff's treating surgeon, Dr. Cho.  Under the treating physician rule, the opinion of a claimant's treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Burgess* v. *Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)).  In cases where a treating physician's opinion is not entitled to "controlling weight," the ALJ must consider various factors in deciding how much deference the opinion is owed, including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran* v. *Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R.

18

§ 404.1527(c)(2)).  Although the ALJ is not required to "mechanically walk through" each of the "relevant factors," *McGann* v. *Colvin*, No. 14 Civ. 1585 (KPF), 2015 WL 5098107, at *12 (S.D.N.Y. Aug. 31, 2015), the ALJ must provide "good reasons" for ascribing a particular weight to a treating doctor's view, 20 C.F.R. § 404.1527(c)(2).  *See also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion[.]").

Here, Dr. Cho's opinion is not entitled to "controlling weight" because it is inconsistent with other evidence in the record, such as the opinions of Drs. Montalvo and Billinghurst.  Nevertheless, Plaintiff argues that the ALJ failed to articulate "good reasons" for giving Dr. Cho's opinion "little weight." As explained above, the ALJ accorded little weight to Dr. Cho's opinion because he believed that the opinion was conclusory and contradicted by Dr. Cho's own treatment notes.  (SSA Rec. 41).  However, Plaintiff argues, those were not good reasons for disregarding Dr. Cho's opinion.  Plaintiff insists that, when the ALJ perceived gaps or inconsistencies in Dr. Cho's opinion, he should have contacted Dr. Cho to ask for clarification.  (Pl. Br. 12).  Because the ALJ failed to seek this clarification, Plaintiff contends, he could not have made a legally proper determination that Dr. Cho's opinion was entitled to slight weight.

To be sure, an ALJ has a duty to follow up with a treating physician if the physician's opinion contains gaps or ambiguities that prevent the ALJ from making a disability determination.  *See* 20 C.F.R. § 404.1520b; *Selian*, 708 F.3d at 421.  However, an ALJ does *not* have a duty to seek additional evidence

19

from a treating physician if the ALJ believes that the additional evidence is not needed to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520b; *Villarreal* v. *Colvin*, No. 13 Civ. 6253 (LGS), 2015 WL 6759503, at *17 n.82 (S.D.N.Y. Nov. 5, 2015).  Nor does the ALJ have a duty to seek additional evidence from a treating physician if the ALJ "know[s] from experience that the [physician] either cannot or will not provide the necessary evidence."  20 C.F.R. § 404.1520b(c)(1).

In this case, the ALJ reasonably concluded that it was unnecessary to follow up with Dr. Cho.  Given the apparently irreconcilable conflicts between the opinions expressed in Dr. Cho's medical source statement and the other evidence in the record, there was likely nothing that Dr. Cho could have said that could lend credibility to his opinion that Plaintiff was incapable of performing even sedentary work.  For example, Dr. Cho's medical source statement suggests that Plaintiff was suffering from "severe pain," but Dr. Cho's own treatment notes suggest that Plaintiff was not taking any pain medicine.  (*Compare* SSA Rec. 338, *with id.* at 329).  Similarly, Dr. Cho's medical source statement opines that Plaintiff can walk only one city block without rest or severe pain, while Plaintiff himself testified that he walks a mile a day for exercise.  (*Compare id.* at 338, *with id.* at 179-83).  Finally, Dr. Cho opined that Plaintiff can sit for "0 minutes," but Plaintiff testified that he can sit for in a car for up to two hours.  (*Compare id.* at 339, *with id.* at 200).  Given

these apparently irreconcilable conflicts in the record,[11] and given the ALJ's decision to credit Plaintiff's testimony about his own abilities (*id.* at 41-42), the ALJ was free to conclude that Dr. Cho's opinion was simply not credible; in other words, the ALJ was free to conclude that it would be pointless to contact Dr. Cho for further information.[12]

Plaintiff also contends that the ALJ violated the treating physician rule by disregarding the "specific limitations" that Dr. Cho discussed in his medical source statement. (Pl. Br. 11). But the ALJ's opinion takes all of the relevant information into account. The ALJ expressly noted that he had "reviewed and considered Dr. Cho's posthearing medical source statement, which was admitted as Exhibit 13F." (SSA Rec 41). The Court will not presume that the ALJ disregarded portions of the statement simply because he did not recite every detail it contained. Instead, the Court will take the ALJ at his word that he considered the statement, and on the whole, found that it was entitled to little weight. (*Id.*).

In addition, Plaintiff suggests that the ALJ mischaracterized Dr. Cho's opinion. (Pl. Br. 12). Dr. Cho opined, in one of his treatment notes: "[G]iven

---

11      These conflicts are particularly pronounced because Dr. Cho's medical source statement is dated just one day after Plaintiff's hearing before the ALJ. (SSA Rec. 46, 49). Thus, this is not a situation in which a conflict in the record could be resolved by asking whether the claimant "deteriorated over time." *Clark* v. *Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

12      The Court recognizes that the ALJ did not explicitly cite Plaintiff's hearing testimony as a reason for discrediting the opinion in Dr. Cho's medical source statement. However, the Court details Plaintiff's testimony concerning his limitations — which the ALJ specifically credited and which further undercuts Dr. Cho's opinions — to underscore the futility of requiring the ALJ to contact Dr. Cho for additional information.

the type of work that he used to perform, I believe that [Plaintiff] is permanently and totally disabled." (SSA Rec. 332). The ALJ treated this remark as an opinion that Plaintiff was "unable to perform, 'the type of work [he] used to perform,' not all work." (*Id.* at 40). Plaintiff contends that this was such an unreasonable characterization of Dr. Cho's view that the ALJ was essentially substituting his own opinion for that of a treating doctor. The Court disagrees.

As an initial matter, the Court believes that the ALJ interpreted Dr. Cho's opinion in an entirely reasonable way. However, the ALJ recognized that Dr. Cho's opinion was open to some degree of interpretation, and determined that, to the extent Dr. Cho was suggesting that Plaintiff was unable to perform even sedentary work, the ALJ accorded that suggestion little weight. (SSA Rec. 41).[13]

Finally, Plaintiff argues that the ALJ should have accorded more weight to the opinions in Dr. Cho's medical source statement because of "the length and nature of his treatment relationship and the consistency of Dr. Cho's opinion with the evidence in the record." (Pl. Br. 10). But it is not this Court's task to re-weigh the evidence before the ALJ. Rather, the Court's role is to determine whether the ALJ's decision was based on substantial evidence. *See Selian,* 708 F.3d at 409. As explained further below, the Court believes that it was.

---

[13]    Moreover, even if the ALJ mischaracterized Dr. Cho's opinion, such an error was harmless, because the ALJ ultimately accorded that opinion little weight. *Cf. Zabala* v. *Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (explaining that an ALJ's failure to discuss a treating physician's opinion can be considered harmless error if there is "no reasonable likelihood" that the opinion could have changed the ALJ's disability determination).

### 3.     The ALJ's Credibility Determination and RFC Determination Were Supported by Substantial Evidence

Plaintiff claims that the ALJ's credibility and RFC determinations were not supported by substantial evidence because the ALJ placed too much emphasis on Plaintiff's ability to perform "limited household activities" (Pl. Br. 16), and too little emphasis on Plaintiff's statements that he continued to suffer from back pain after his surgery (*id.* at 17). Plaintiff further contends that the ALJ failed to take into account Dr. Montalvo's and Dr. Billinghurst's findings that Plaintiff had a limited range of motion in his lumbar spine, or Ms. Potrafka's statement that Plaintiff was limited to only occasional stooping, kneeling, crouching, and crawling. (*Id.* at 13). Once again, Plaintiff has asked the Court to reweigh the evidence before the ALJ, and once again, the Court declines to do so.

The ALJ properly evaluated Plaintiff's credibility "under the factors described in 20 CFR 404.1529(c)(3) and Social Security Ruling 96-7p," and found that Plaintiff was not wholly credible. (SSA Rec. 41). He also surveyed all of the evidence in the record, and concluded that Plaintiff could perform a full range of light work, except for jobs requiring more than occasional stooping or climbing. These determinations were adequately supported by the evidence in the record, including Plaintiff's own testimony that he walked a relatively long distance on a daily basis, and performed a variety of labor-intensive household chores, such as sweeping, dusting, making the bed, washing dishes and shopping for food. (*See* SSA Rec. 179-83). The determinations were further supported by the opinion of Dr. Montalvo, who found that Plaintiff had

23

only "mild to moderate" limitations (*id.* at 278-80), and the opinion of Dr. Billinghurst, who suggested that Plaintiff could still perform light work (*id.* at 318).   *See* 20 CFR 404.1529(c)(3)(i) (noting that, in making a credibility determination, an ALJ can consider a claimant's "daily activities").   Finally, the determinations were supported by the Plaintiff's apparent lack of disabling symptoms during the hearing.   (SSA Rec 41).   *See* 20 CFR 404.1529(c)(3)(i) (noting that SSA employee observations are relevant to the credibility inquiry). Thus, the Court will not disturb the ALJ's conclusions.

### 4.   The ALJ Should Have Considered Plaintiff's Lyme Disease in Making His RFC Determination, But Any Failure to Do So Was Harmless Error

The ALJ seemed to disregard evidence of Plaintiff's Lyme disease because that "impairment [was] unrelated to his back pain and is not considered disabling." (SSA Rec. 40).   To the extent that the ALJ disregarded this evidence, he committed a legal error.   The Second Circuit has repeatedly held that, in making a disability determination, an ALJ must consider "the combined effect of a claimant's impairments," regardless of whether each individual impairment is severe enough to render the claimant disabled. *McIntyre* v. *Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014) (quoting *Dixon* v. *Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)).   Thus, the ALJ was required to consider the combined effect of Plaintiff's spinal injury and his Lyme disease, even if the Lyme disease was "not considered disabling" on its own.

Nevertheless, if the ALJ improperly disregarded evidence regarding Plaintiff's Lyme disease, that error was harmless.   Dr. Montalvo performed a

24

full "internal medicine examination" on Plaintiff, and considered his complete medical history, including his past Lyme disease.  (SSA Rec. 278).  Taking this medical history into account, Dr. Montalvo expressed an opinion about Plaintiff's physical limitations (*id.* at 278-82), and the ALJ accorded this opinion "great weight" (*id.* at 41).  Similarly, Dr. Billinghurst reviewed Plaintiff's medical records, including his "history of [L]yme disease," and determined that an RFC of "light work" would be reasonable.  (*Id.* at 318).  The ALJ accorded Dr. Billinghurst's opinion "significant weight."  (*Id.* at 41).  Because the ALJ relied so heavily on the opinions of physicians who factored Plaintiff's Lyme disease into their conclusions, the ALJ's failure to explicitly discuss the limiting effects of Plaintiff's Lyme disease was harmless error.  *Cf. McIntyre*, 758 F.3d at 151-52 (holding that an ALJ's failure to ask questions about a particular problem was harmless because the ALJ's questions "*implicitly* accounted for" the combined effect of all the claimant's limitations (emphasis added, brackets and internal quotation marks omitted)).

### 5.    The ALJ's Reliance on the Grids Was Appropriate

Contrary to Plaintiff's suggestion, the ALJ did not err in consulting the Medical-Vocational Guidelines (the "grids") — rather than a vocational expert — to determine whether Plaintiff could perform other jobs in the national economy.  As the Second Circuit has explained, an ALJ is required to consult a vocational expert if a claimant has "nonexertional limitations that '*significantly* limit the range of work permitted by his exertional limitations.'"  *Zabala* v. *Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp* v. *Bowen*, 802 F.2d 601,

605 (2d Cir. 1986)) (emphasis added).  A non-exertional limitation is "significant[]" if it causes a non-negligible loss of work capacity, or "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Id.* at 411 (internal quotations and citations omitted).

Plaintiff contends that the ALJ overlooked several significant non-exertional impairments that Dr. Cho identified in his report, including limitations on Plaintiff's ability to "bend, twist, pull, or stretch."  (Pl. Br. 18).  As explained above, however, the ALJ chose to prioritize the opinions of Drs. Montalvo and Billinghurst over that of Dr. Cho.  These two physicians had a much more limited view of the limitations on Plaintiff, and having accepted that view, the ALJ had no obligation to consult a vocational expert.

### 6.    Plaintiff Has Not Identified New Evidence That Justifies Remand

Finally, Plaintiff urges the Court to remand his case so that the ALJ may consider two new pieces of evidence: an August 2014 report from Dr. William Thompson, the physician who treated Plaintiff's knee injury (Pl. Br. 19; SSA Rec. 343), and records of checkups at The Heart Center, dated March 2, 2012 and June 27, 2014 (SSA Rec. 8-13).  Under 42 U.S.C.A. § 405(g), this Court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See also Pollard* v. *Halter*, 377 F.3d 183, 193 (2d Cir. 2004).  New evidence is considered "material" if: (i) it is "relevant to the

claimant's condition during the time period for which benefits were denied," (ii) it is "probative," and (iii) there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Pollard,* 377 F.3d at 193 (quoting *Tirado* v. *Bowen,* 842 F.2d 595, 597 (2d Cir. 1988)).

Here, there is no "reasonable possibility" that Plaintiff's new evidence would have swayed the ALJ.  On August 12, 2014, Dr. Thompson reported that his examination of Plaintiff was "unremarkable," and his only recommendation for Plaintiff was "observation."  (SSA Rec. 343).  Similarly, the records from The Heart Center did not identify any additional limitations on Plaintiff's activities.  (*Id.* at 8-13).  Consequently, the Court will not require that the ALJ consider this evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed; Defendant's motion for judgment on the pleadings is GRANTED; and Plaintiff's motion for judgment on the pleadings is DENIED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:       July 6, 2016
             New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge